**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TREVOR HOWSE,

      Plaintiff,

v.                                                                    Case No:  6:16-cv-594-Orl-40TBS

DIRECTV, LLC,

      Defendant.

_____

## <u>ORDER</u>

This cause comes before the Court on the following:

1. Defendant's Amended Motion to Compel Arbitration (Doc. 11), filed May 5, 2016;

2. Plaintiff's Response to Defendant's Motion to Stay and Compel Arbitration (Doc. 15), filed June 6, 2016;

3. Defendant's Reply to Plaintiff's Response to its Motion to Compel Arbitration (Doc. 18), filed July 1, 2016; and

4. Plaintiff's Surreply to Defendant's Motion to Stay and Compel Arbitration (Doc. 24), filed July 26, 2016.

Upon consideration, Defendant's Amended Motion to Compel Arbitration will be granted.

## I.    BACKGROUND

On January 7, 2015, Plaintiff, Trevor Howse ("Howse"), ordered a two-year subscription for satellite television service from Defendant, DirecTV, LLC ("DirecTV").  On July 20, 2015, Howse cancelled his subscription.  Three days after cancellation, Howse

received a bill from DirecTV notifying him that he owed a $340.00 early cancellation fee. The bill additionally informed Howse that DirecTV intended to automatically charge Howse's debit card on file to recover any amounts left unpaid.  On July 29, 2015, Howse mailed DirecTV a letter revoking his authorization for DirecTV to charge his debit card. Notwithstanding Howse's letter, DirecTV debited $219.81 from Howse's checking account on September 1, 2015.

Howse initiated this lawsuit on April 7, 2016.  Howse alleges that DirecTV violated his rights under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693–1693r, and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55–559.785, by debiting his checking account without authorization.  DirecTV now moves to compel the arbitration of both claims pursuant to an arbitration clause contained within Howse's contract with DirecTV.

## II.  STANDARD OF REVIEW

It is well-established that parties may contract to settle potential disputes by arbitration and that such agreements are favored by law.  *E.g.*, *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009).  As a corollary, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Because arbitration clauses are themselves creatures of contract, courts apply state contract law in determining the scope and enforceability of an arbitration clause.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  When a court finds that a valid and enforceable arbitration clause binds the parties, the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Because the right to

arbitrate must be liberally enforced, any doubt about whether a dispute is arbitrable should be resolved in favor of arbitration.  *AT&T Techs.*, 475 U.S. at 650.

### III.    DISCUSSION

Howse does not dispute that both of his claims fall within the scope of the arbitration clause contained within his contract with DirecTV.  Instead, Howse raises two issues which he argues preclude arbitration.  First, Howse contends that the arbitration clause is unconscionable under Florida law.  Second, Howse asserts that his EFTA claim cannot be submitted to arbitration because the EFTA contains a congressional mandate that overrides otherwise enforceable arbitration agreements.  The Court examines these two issues in turn.

### A.    Unconscionability

Under Florida law, a court may invalidate an arbitration clause where it is found to be unconscionable.  *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1999).  "To support a determination of unconscionability, however, the court must find that the [arbitration clause] is both procedurally unconscionable and substantively unconscionable."  *Id.*  Procedural unconscionability refers to how the agreement to arbitrate was procured, which requires the court to consider factors such as the parties' relative bargaining power and their ability to understand the terms of the arbitration clause.  *Id.*  In contrast, substantive unconscionability refers to the content of the arbitration clause itself, and requires the court to determine whether the terms of the clause are unreasonable or unfair.  *Id.*

While both procedural unconscionability and substantive unconscionability must be present in order to invalidate an arbitration agreement as unconscionable, "they need

not be present to the same degree." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014).  Rather, the Florida Supreme Court requires the application of a sliding scale approach when determining whether an arbitration clause is unconscionable.  *Id.*  That is, the more substantively oppressive an arbitration clause is, the less procedurally oppressive it needs to be to sustain a finding of unconscionability, and vice versa.  *Id.* "This approach recognizes that although the concept of unconscionability is made up of both a procedural component and a substantive component, it often involves an evaluation in which the two principles are intertwined." *Id.* at 1160.  Nevertheless, if either component is lacking, the arbitration clause in dispute is not unconscionable.  *See Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019 (Fla. Dist. Ct. App. 2005).

As to procedural unconscionability, Howse makes two arguments.  First, Howse states that he was never notified of or given an opportunity to read the contract containing the arbitration clause before subscribing to DirecTV's services.  Howse alleges that he was approached by a door-to-door salesman who signed him up with DirecTV over the phone without ever providing a copy of the contract or informing him of the contract's terms, including that just about any dispute he may have with DirecTV would be resolved by arbitration.  Howse additionally maintains that, even if he had been provided with a copy of the contract, DirecTV would have charged him an early cancellation fee had he wanted to reject the arbitration clause or any other term in the contract.  As a result, Howse submits that he was deprived of the opportunity to know what he was agreeing to at the time he executed the contract with DirecTV and that he had no meaningful opportunity to reject the arbitration clause without penalty if he wanted to cancel his order.

It is certainly true that an arbitration clause may be procedurally unconscionable if the person being subjected to its terms never had an opportunity to know what the arbitration clause required or to reject the arbitration clause.  *See, e.g.*, *Woebse v. Health Care & Retirement Corp. of Am.*, 977 So. 2d 630, 633–34 (Fla. Dist. Ct. App. 2008) (finding arbitration clause procedurally unconscionable where the customer was not allowed to read the contract before signing and was never informed that the contract contained an arbitration clause).  However, the record in this case reveals that Howse had ample opportunity to do both.  When Howse first ordered DirecTV's services through the door-to-door salesman on January 7, 2015, DirecTV immediately emailed Howse an order confirmation which included Internet links to Howse's contract and to DirecTV's terms and conditions.  (Doc. 11-1, Walters Aff. ¶ 6 & Ex. B).  This order confirmation clearly and explicitly advised Howse to "[r]eview your customer agreements," and notified Howse that another copy of his contract would be emailed to him within twenty-four hours. (Doc. 11-1, Ex. B).  The email also informed Howse that he could change his order up to twenty-four hours prior to DirecTV installing the equipment necessary for Howse to receive DirecTV's services, thus allowing Howse to cancel his order if he did not accept any of the terms required by DirecTV's contract.  (*Id.*).  Further, when DirecTV arrived at Howse's home three days later to install its equipment, Howse signed a digital work order acknowledging that his term of service began that day and that he previously received the contract containing the arbitration clause.  (Doc. 11-1, Walters Aff. ¶ 8 & Ex. C).

In sum, Howse received the contract containing the arbitration clause at least twice during the three days prior to his satellite television service commencing: once through DirecTV's January 7, 2015 order confirmation email and again through the follow-up email

sent within the next twenty-four hours.  Howse does not dispute that he received these emails.  Over the next three days, Howse could have cancelled his order if he did not accept any term of the contract, including the arbitration clause.  And contrary to Howse's claim, DirecTV would not have charged him an early cancellation fee had he cancelled his order during this time.  As DirecTV observes, the early cancellation fee Howse refers to only applies once the customer's service with DirecTV begins.  (*See* Doc. 11-1, Walters Aff. ¶ 9 & Ex. A, p. 4).  Since Howse's service did not begin until January 10, 2015, when DirecTV installed its equipment,[1] Howse had approximately three days to cancel his order without being penalized.  The arbitration clause is therefore not procedurally unconscionable either for lack of notice or for lack of opportunity to reject the arbitration clause without penalty.

Howse's second argument as to the arbitration clause's procedural unconscionability is that DirecTV held immense bargaining power over the terms and conditions of the contract.  Specifically, Howse contends that DirecTV's contract is essentially an adhesion contract and that he had no ability to negotiate its terms, including the arbitration clause.  Howse therefore reasons that he had no choice but to accept DirecTV's contract and be bound by the arbitration clause lest he forego the ability to watch satellite television.

"[T]he fact that a contract is one of adhesion is a strong indicator that the contract is procedurally unconscionable because it suggests an absence of 'meaningful choice.'"

---

[1]   The Court notes that Howse attached a billing statement to his Complaint in support of his claims in this case.  (Doc. 1-1).  That billing statement reflects the billing period beginning on July 10, 2015, lending further support to the conclusion that Howse's service began on January 10, 2015.

*Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 285 (Fla. Dist. Ct. App. 2003) (quoting *Powertel*, 743 So. 2d at 574–75).  "However, the presence of an adhesion contract alone does not require a finding of procedural unconscionability."  *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 40 (Fla. Dist. Ct. App. 2005). There must be something more for an adhesion contract to be procedurally unconscionable, such as the seller utilizing deceptive sales practices or hiding important contract language "in a maze of fine print."  *Powertel*, 743 So. 2d at 574.  Further, it is well-recognized among Florida's courts that "the purchaser of services [is] free to obtain such services elsewhere" if he or she does not want to agree to a particular seller's terms. *Id.*  Accordingly, the fact that a purchaser elects to be bound by an adhesion contract imposed by the seller of his or her choice is not enough to amount to procedural unconscionability.  *See, e.g.*, *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 265 (Fla. Dist. Ct. App. 2004) (finding adhesion contract not to be procedurally unconscionable and enforcing arbitration clause where customer could have obtained termite extermination services elsewhere); *Weston*, 857 So. 2d at 285 (finding adhesion contract not to be procedurally unconscionable and enforcing arbitration clause where customer could have obtained nursing home services elsewhere).

DirecTV acknowledges that its contract is likely an adhesion contract which requires purchasers to accept its terms in order to receive DirecTV's services. Notwithstanding, this fact alone is insufficient to find procedural unconscionability in this particular case.  The contract is well-organized with clearly labeled titles and subtitles for each pertinent topic.  The arbitration clause itself is found under the bold and capitalized title, "RESOLVING DISPUTES," and is written using easily understood language.  (*See*

Doc. 11-1, Ex. A, p. 9).   Indeed, Howse does not suggest that he had any trouble understanding the terms of the contract or the arbitration clause.  (*See* Doc. 15-1, Howse Decl.).   Moreover, the first page of the contract notifies the purchaser in capitalized language that he or she has the right to reject the contract and forego receiving DirecTV's services.  (Doc. 11-1, Ex. A, p. 1).  As a result, the purchaser is free to obtain television services from other providers (or to not obtain television services at all) without being bound by DirecTV's contract.   The arbitration clause is therefore not procedurally unconscionable due to the parties' disparate bargaining power.

Because Howse fails to demonstrate the procedural component of unconscionability, the Court finds that the arbitration clause is not unenforceable as unconscionable.

### B.    Arbitration of EFTA Claims

Next, Howse argues that his EFTA claim cannot be submitted to arbitration because a congressional mandate embodied within the statute overrides the strong federal policy favoring arbitration.  Ordinarily, the Federal Arbitration Act ("FAA") requires courts to enforce agreements to arbitrate statutory claims enacted by Congress.  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  Notwithstanding, this requirement may be "overridden by a contrary congressional command."  *Id.*  In order to establish such a congressional command, the party attempting to avoid arbitration must "show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."  *Id.*  "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the

[statute's] underlying purposes." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *McMahon*, 482 U.S. at 227).

Howse asserts that the EFTA's text evinces Congress's clear intent to preclude the waiver of judicial remedies.  First, Howse cites 15 U.S.C. § 1693m(g), which provides, in pertinent part, that "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction."  Howse then points to 15 U.S.C. § 1693*l*, which provides as follows:

> No writing or agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by [the EFTA].  Nothing in this section prohibits, however, any writing or other agreement which grants to a consumer a more extensive right or remedy or greater protection than contained in this subchapter or a waiver given in settlement of a dispute or action.

Howse takes the position that a mandatory arbitration clause, like the clause in his contract with DirecTV, waives his right under § 1693m(g) to bring a claim under the EFTA in a judicial forum.

However, Howse misconstrues § 1693m(g).  That section does not grant a substantive right to assert an EFTA claim in a federal district court; rather, it simply specifies that "a federal district court is one appropriate forum in which to bring an EFTA claim."  *Williams v. Champs Auto Sales, Inc.*, No. 14-cv-12866, 2014 WL 6886546, at *2 (E.D. Mich. Dec. 4, 2014).  In fact, the U.S. Supreme Court rejected Howse's argument when it was made in reference to a similar provision contained within the Credit Repair Organizations Act ("CROA").  *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 670–71 (2012) (explaining that a statutory provision within CROA permitting a plaintiff to bring a lawsuit in federal district court does not grant a substantive right to court access,

but rather acts to provide a judicial avenue for imposing liability).  As a result, Howse also misconstrues § 1693*l*.  That section speaks to the non-waiver of substantive rights and remedies afforded by the EFTA.  Since the ability to bring an EFTA claim in a federal district court is not a substantive right or remedy, the anti-waiver provision in § 1693*l* does not apply.

The tenets of statutory interpretation further support the conclusion that § 1693*l* does not express Congress's intent to preclude the waiver of judicial remedies for EFTA claims.  In reading a statute, courts must assume that "Congress said what it meant and meant what it said."  *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc).  Likewise, "[w]here Congress knows how to say something but chooses not to, its silence is controlling."  *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) (citation and internal quotation marks omitted).

Had Congress intended to grant a substantive right to bring EFTA claims in federal district court or to preclude the arbitration of EFTA claims, it could have easily done so by employing the mandatory words "must" or "shall" in § 1693m(g) in lieu of the permissive "may."  The Court therefore reads § 1693m(g) as permitting non-judicial avenues for resolving EFTA violations, including arbitration.  Further, "[i]n every case the Supreme Court has considered involving a statutory right that does not explicitly preclude arbitration, it has upheld the application of the FAA."  *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 474 (5th Cir. 2002).  The Court consequently finds Congress's silence in the EFTA on the issue of arbitration controlling, again leading to the conclusion that arbitration is a permissible avenue for resolving EFTA claims.  Finally, those courts confronting the issue have determined that EFTA claims are indeed arbitrable.  *See, e.g.*,

*Johnson v. W. Suburban Bank*, 225 F.3d 366, 378–79 (3d Cir. 2000) (finding that EFTA class action claim was subject to arbitration pursuant to the parties' agreement); *Byrd v. SunTrust Bank*, No. 2:12-cv-02314-JPM-cgc, 2013 WL 3816714, at *15 (W.D. Tenn. July 22, 2013) (compelling the arbitration of the plaintiffs' EFTA claim); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1272 (C.D. Cal. 2008) ("Claims for violation of the EFTA . . . are arbitrable."); *Novak v. JP Morgan Chase Bank, N.A.*, No. 06-14862, 2008 WL 907380, at *1, 9 (E.D. Mich. Mar. 31, 2008) (adopting the magistrate judge's report and recommendation finding that the plaintiff's EFTA claim should be submitted to arbitration pursuant to the parties' agreement).

Howse ultimately fails to carry his burden of demonstrating that Congress intended to preclude the waiver of judicial remedies for alleged violations of the EFTA. Accordingly, Howse's EFTA claim against DirecTV is subject to arbitration pursuant to the parties' arbitration clause.

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Amended Motion to Compel Arbitration (Doc. 11) is **GRANTED**. The parties shall proceed to arbitration in accordance with the terms of their arbitration agreement.

2. The proceedings are hereby **STAYED** and the Clerk of Court is **DIRECTED** to administratively close the file. The Court retains jurisdiction of the case to adjudicate any post-arbitration motions the parties may make.

3.  The parties shall file a joint status report on **January 30, 2017**, and every **ninety (90) days** thereafter advising the Court on the progress of arbitration.

**DONE AND ORDERED** in Orlando, Florida on October 31, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record